UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80530-CIV-MARRA

ROSLYN HOUSTON,

    Plaintiff,

v.

TOWN OF PALM BEACH SHORES,
a political subdivision
of the State of Florida,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant, Town of Palm Beach Shores', Motion for Summary Judgment and Incorporated Memorandum of Law (DE 34). Plaintiff filed her Response (DE 45). Defendant replied (DE 50). The Court has carefully considered the briefs of the parties and is otherwise fully advised in the premises.

## I. Background

In 2001, the Town of Palm Beach Shores Commission approved funding for five full-time dispatcher positions with the local police department. (DE 36, Attach. 2: Lindskoog Aff. ¶ 4). Five dispatchers were hired as full-time employees by the Town of Palm Beach Shores [hereinafter "the Town"]. (Lindskoog Aff. ¶ 5). The Town also hired part-time dispatchers to supplement these full-time dispatchers' duties. (Lindskoog Aff. ¶ 6). One of these part-time dispatchers, Lori Saradakis, began working for the Town in 2002. (Lindskoog Aff. ¶ 6). Saradakis is white. Plaintiff Roslyn Houston, another part-time dispatcher, was hired in 2008. (Lindskoog Aff. ¶ 6). Plaintiff is black.

Saradakis and Plaintiff worked together for the Town from 2008 until February 2010, when Saradakis accepted a full-time position elsewhere. (DE 36, Attach. 4: Langevin Aff. ¶ 5). After Saradakis left her employment with the Town, only two part-time dispatchers remained: Plaintiff and Kim Tasker. (DE 47, Attach. 1: Pl. Houston Dep. at 67). In August 2010, Plaintiff told the town lieutenant, Steven Langevin [hereinafter "the lieutenant"], that she was looking for full-time work at other agencies; and upon Plaintiff's request, the lieutenant wrote Plaintiff a letter of recommendation stating that "[Plaintiff] would be an asset to any organization." (Langevin Aff. ¶ 6).

On September 11, 2010, the Town terminated one of its full-time dispatchers, Michael Whelan, for insubordination. (DE 36, Attach. 3: Kniffin Aff. ¶ 6). Plaintiff learned of the opening and told the lieutenant that she wanted the job. However, she was advised that the Town was on a hiring freeze. (Pl. Houston Dep. at 75–76).

Some time after Whelan's termination, both the town manager, Cynthia Lindskoog [hereinafter "the town manager"], and the vice mayor, Alan Fiers [hereinafter "the vice mayor"], attended a meeting to discuss whether to eliminate the position that Whelan left open due to budget constraints. The vice mayor was in favor of eliminating the position. (DE 36, Attach. 5: Fiers Aff. ¶¶ 6–7). The town manager then met with the mayor, John Workman [hereinafter "the mayor"], and the chief of police, Steven Kniffin [hereinafter "the chief of police" or "the police chief"], to discuss the issue. The police chief confirmed that the fifth dispatcher position was superfluous because the scheduling of five dispatchers resulted in two dispatchers being on duty even though the workload could be managed by one. (Kniffin Aff. ¶¶ 7–8; Pl. Houston Dep. at 84).

The town manager, the mayor, the vice mayor, and the police chief believed that the dispatch

center only needed one dispatcher on duty to operate. They concluded that the Town could get by with four full-time dispatcher positions because a single-dispatcher schedule required staffing 168 hours per week—and four full-time dispatchers would account for 160. (Kniffin Aff. ¶ 8; DE 36, Attach. 6: Workman Aff. ¶ 6).[1] They further concluded that the eight hours per week for which there was no coverage by a full time dispatcher, plus the uncovered hours resulting from vacation or unexpected sick days taken by full-time dispatchers, could be covered by retaining several part-time dispatchers. (Workman Aff. ¶ 7). Accordingly, the Town decided not to hire a fifth full-time dispatcher to replace Whelan. (Workman Aff. ¶ 8).[2]

After the Town's decision, Plaintiff continued serving as a part-time dispatcher until October 23, 2010, when she took a full-time position with another municipality. (Pl. Houston Dep. at 17–19).[3] Upon Plaintiff's departure, the police chief had his lieutenant begin looking for more part-

---

[1] The parties disagree over the exact timing of the Town's decision not to hire a fifth full-time dispatcher. While Plaintiff maintains that the lieutenant stated the decision "was still up in the air" as of November 4, 2010 (DE 46 ¶¶ 15, 17), the Court concludes that the exact timing of the Town's decision is not material and has no bearing on the outcome of this case.

[2] Throughout Plaintiff's Statement of Disputed Facts and Response to Defendant, Town of Palm Beach Shores', Statement of Undisputed Facts in Support of Summary Judgment (DE 46), Plaintiff responds to the Town's statements as follows: "Admit as to that is what is stated in their affidavits. Denied as to whether this reason was pretext for discrimination." The Court interprets this statement as an admission by Plaintiff of the facts underlying the Town's statement, but a denial of the Town's implicit suggestion that any action taken was not discriminatory.

[3] The parties disagree over whether Plaintiff stayed employed with the Town in a part-time capacity even after she accepted full-time employment elsewhere. As a matter of law, the Court concludes that Plaintiff's employment status at the time of Saradakis's hire is relevant only to whether Plaintiff must make out a *prima facie* case for "failure to hire" as opposed to "failure to promote." The Court agrees with Plaintiff's characterization of her claim as a "failure to promote" case because she remained on the call list for part-time dispatch shifts even after she accepted the full-time position at the other municipality. (Pl. Houston Dep. at 79–80). Thus, the Court need not

time dispatchers to hire. (Langevin Aff. ¶ 9). The lieutenant called Saradakis, Plaintiff's former part-time co-worker, regarding the job (Langevin Aff. ¶ 11)[4]; and on November 4, 2010, he sent an e-mail stating that Saradakis accepted a part-time dispatcher position with the Town. (DE 47, Attach 3.: Langevin Dep. at 11–15). The Town continued its search for part-time help by posting a November 14, 2010, advertisement in the Palm Beach Post seeking additional dispatchers (Langevin Aff. ¶ 12). Four full-time dispatchers operated the dispatch center, supplemented by part-time assistance, until January 2011—when the Town's scheduling woes prompted a decision to reinstate the fifth full-time dispatch position. (Kniffin Aff. ¶¶ 12–13).

The lieutenant recommended only Saradakis to the police chief for the position even though, according to Plaintiff, the Town "would have had no reason not to hire [Plaintiff]" had she been recommended. (Langevin Aff. ¶¶ 15, 18; Kniffin Aff. ¶ 14; DE 47, Attach. 6: Kniffin Dep. at 25–27). As mentioned above, the parties disagree over whether Saradakis was offered the fifth full-time position before the January 2011 decision to reinstate it, but it is undisputed that Saradakis accepted the position at some point and began working for the Town full-time. (Kniffin Aff. ¶ 14).

Plaintiff alleges that the Town's decision to promote Saradakis over her is the result of racial

---

discuss further Plaintiff's employment status at the time of Saradakis's hire because the Court finds that Plaintiff sufficiently established her *prima facie* case. The Court will consider below Plaintiff's claim that Saradakis never should have been offered the full-time dispatch position under the Town's hiring and promotion policies because Plaintiff remained an employee of the Town, while Saradakis did not.

[4] The parties disagree whether the lieutenant, prior to November 4, 2010, offered Saradakis a full or part-time position. (DE 46 ¶ 22). The Court concludes, however, that the specifics of the lieutenant's offer—like the timing of the Town's decision not to hire a fifth full-time dispatcher—is not material and has no bearing on the outcome of the case.

4

discrimination.[5] The Town's stated reasons for the hire include that Saradakis had more experience than Plaintiff, that the lieutenant had personally observed Saradakis perform at a higher level than Plaintiff while both were employed as part-time dispatchers, that Plaintiff had recently obtained a full-time position at a bigger municipality, that Saradakis was more qualified than Plaintiff, that Saradakis had more seniority at the Town than Plaintiff, and that Saradakis also possessed more certifications related to dispatch than Plaintiff.

Plaintiff admits that Saradakis had more seniority at the Town and more overall experience as a dispatcher than Plaintiff. (Pl Houston Dep. at 67, 122). Plaintiff also admits that Saradakis was more qualified for the position. (Pl. Houston Dep. at 108). Notwithstanding these concessions, however, Plaintiff suggests that the Town's stated reasons for its hiring decision were pretext for the racially-motivated hire of a white co-worker.

Plaintiff's claim alleges two theories of discrimination: racial discrimination in violation of 42 U.S.C. § 1981 (Count I), and racial discrimination in violation of Title VII of the Civil Rights Act (Count II).[6] (DE 24 ¶¶ 34–43). Defendant moves for summary judgment claiming that, under the

---

[5] The Court notes that the police chief was the "decisionmaker" for hiring the person to fill the full-time dispatch position. The Court refers to the Town as the decisionmaker above merely for ease of reference.

[6] Title VII provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e–2(a)(1) (2012). Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981 (2012). "Title VII

5

burden-shifting framework set out by the Supreme Court in *McDonnell Douglas Corp.* and *Burdine*, Plaintiff has failed to present sufficient circumstantial evidence of discrimination to satisfy the elements of her *prima facie* claim.[7] In the alternative, Defendant argues that it had legitimate, non-discriminatory reasons for its hiring decision, and that Plaintiff has failed to establish that those reasons were pretextual. For the reasons set forth below, the Court finds for Defendant.[8]

## II. Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be

---

and § 1981 have the same requirements of proof and use the same analytical framework." *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1256–57 (11th Cir. 2012) (internal quotations and citation omitted).

[7] "A plaintiff may establish a claim of illegal disparate treatment through either direct evidence or circumstantial evidence." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004) (citing *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999)). Plaintiff has conceded that she has no direct evidence of discrimination in this case based on the standards set forth by the Eleventh Circuit Court of Appeals. (DE 45 at 3 n.4).

[8] The Court notes that, contrary to Plaintiff's assertion that summary judgment is generally an inappropriate tool for resolving claims of employment discrimination because they involve an examination of motive and intent, the Eleventh Circuit has recently held that "the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." *Wilson*, 376 F.3d at 1086 (citation omitted); *see also Denney v. City of Albany*, 247 F.3d 1172, 1182 n.4 (11th Cir. 2001).

resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50.

### III. Discussion

In *McDonnell Douglas Corp. v. Green*, the Supreme Court established the burden-shifting framework for Title VII claims supported by circumstantial evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981); *see also Walker v. Mortham*, 158 F.3d 1177, 1183–85 (11th Cir. 1998). First, a plaintiff must make out a *prima facie* case of racial discrimination, whereupon the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for not promoting her. If the defendant succeeds, "the presumption of discrimination created by the prima facie case is rebutted," *Bernstein v. Sephora*, 182 F. Supp. 2d 1214, 1220 (S.D. Fla. 2002), and the plaintiff may try to show that the defendant's articulated reason is mere pretext. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. Quarreling with that reason is not sufficient." *Wilson*, 376 F.3d at 1088. The plaintiff bears the ultimate burden of persuasion at all times. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146 (2000); *Burdine*, 450 U.S. at 253; *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007).

**A. The *prima facie* case**

The four elements of the *prima facie* case, as set forth in *McDonnell Douglas*, are

> 1) that the plaintiff belong to a racial minority,
> 2) that she applied and was qualified for a job for which the employer was seeking applicants,
> 3) that, despite her qualifications, she was rejected, and
> 4) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications.

8

The Supreme Court recognized that it may be necessary to alter these requirements in unique factual scenarios, *McDonnell Douglas Corp.*, 411 U.S. at 802 n.13, and the Eleventh Circuit has extrapolated from that recognition "an alternative to the fourth element of the *McDonnell-Douglas* standard to address a situation in which the plaintiff 'loses out' to another applicant in competition for the coveted promotion." *Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998) (citing *Crawford v. W. Elec. Co.*, 614 F.2d 1300, 1315 (5th Cir. 1980)[9]). Such an alternative was necessary, the court noted, "because the fourth *McDonnell-Douglas* criterion, that the position remained open and that the employer continued to seek applicants after the plaintiff's rejection, certainly should not be required when the plaintiff's rejection is simultaneous with the hiring or promotion of the person chosen to fill the position." *Id.* (citations and internal quotations omitted). Curiously, however, the Eleventh Circuit has conflicting lines of precedent regarding what the "alternative to the fourth element" should be.

*Crawford v. Western Electric Company*, the first case in the circuit to address the issue, framed the fourth element as requiring the plaintiff to show that after her rejection the defendant employer "*either* continued to attempt to fill the positions *or* in fact filled the positions with [persons outside the plaintiff's protected class]." 614 F.2d at 1315 (emphasis added). *Crawford* made no mention of a "relative qualifications" component to the fourth element, and numerous cases have cited *Crawford* approvingly for the proposition that a plaintiff need not delve into that issue at the *prima facie* stage. *See, e.g.*, *Walker*, 158 F.3d at 1185–87; *Maddox v. Claytor*, 764 F.2d 1539, 1546

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

(11th Cir. 1985); *Hill v. Seaboard Coast Line R.R. Co.*, 767 F.2d 771, 773–74 (11th Cir. 1985); *see also Harrington v. Disney Reg'l Entm't, Inc.*, 276 F. App'x 863, 872–73 (11th Cir. 2007); *Johnson v. Bd. of Ts. of Univ. of Ala.*, 191 F. App'x 838, 843 (11th Cir. 2006); *Summerlin v. M&H Valve Co.*, 167 F. App'x 93, 95 (11th Cir. 2006).[10]

Conversely, *Perryman v. Johnson Products Company*, decided less than three years after *Crawford*, framed the fourth element as requiring the plaintiff to show that after her rejection, "other employees *with equal or lesser qualifications* who were not members of the protected minority were promoted." 698 F.2d 1138, 1142 n.7 (11th Cir. 1983) (emphasis added). Like *Crawford* and its progeny, several cases have followed the *Perryman* standard and its "relative qualifications" requirement. *See, e.g.*, *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010); *Wilson*, 376 F.3d at 1089.

In 1998, the Eleventh Circuit in *Walker v. Mortham* attempted to address the intra-circuit split by applying the "earliest case" rule and holding that the *Crawford* formulation of the *prima facie* test was correct, i.e., that plaintiffs did not have to show that they were equally or more qualified than the other applicants. *Walker*, 1188–93; *see also Summerlin*, 167 F. App'x at 95; Eddie Kirtley, Comment, *Where's Einstein When You Need Him? Assessing the Role of Relative Qualifications in a Plaintiff's Case of Failure-to-Promote Under Title VII*, 60 U. Miami. L. Rev. 365, 367–77 (2006) (discussing the Eleventh Circuit's intra-circuit split). Notwithstanding the decision in *Walker*, the Eleventh Circuit has issued opinions using both the *Crawford* and *Perryman*

---

[10] The Eleventh Circuit has also cited approvingly the standard set forth in *Crawford* without citing *Crawford* directly. *See Springer*, 509 F.3d at 1347 n.2.

standards, *compare Springer*, 509 F.3d at 1347 n.2 (*Crawford* standard), *with Brown*, 597 F.3d at 1174 (*Perryman* standard), but the appellate court has not addressed the conflict in a published opinion. *Cf. Paul v. Americold Logistics, LLC*, 450 F. App'x 850, 852 (11th Cir. 2012) (requiring plaintiff to establish as the fourth element of the *prima facie* case only that "the person who received the promotion was not a member of the plaintiff's protected group.") (citing *Walker*, 158 F.3d at 1185–93); *Harrington*, 276 F. App'x at 872–73. However, this Court concludes that it must follow the "earliest case" rule, and therefore *Crawford* and *Walker* control.

The parties here do not dispute that Plaintiff is a member of a protected minority, that she sought and was qualified for the promotion to full-time dispatcher, that she was rejected in spite of her qualifications, and that the Town promoted Saradakis, an individual outside Plaintiff's protected class. Consequently, Plaintiff has established a *prima facie* case of racial discrimination, shifting the burden of production to the Town to articulate a legitimate, nondiscriminatory reason for not promoting her.

### B. Legitimate, nondiscriminatory reasons

The Town maintains—and Plaintiff admits—that Saradakis was the more qualified of the two candidates. (Pl. Houston Dep. at 108). The police chief who hired her states that Saradakis had more experience than Plaintiff, more seniority with the Town than Plaintiff, more certifications related to dispatch than Plaintiff, and Saradakis performed better than Plaintiff while both were employed as part-time dispatchers. (Kniffin Aff. ¶¶ 15–16). The chief also states that he considered Plaintiff's full-time position at another municipality as a factor in deciding not to offer her the position. (Kniffin Aff. ¶ 15).

11

Saradakis's superior qualifications present a legitimate, nondiscriminatory reason for the Town's decision to hire her over Plaintiff. As such, the burden shifts back to Plaintiff to prove that the stated reason is pretextual.

### C. Pretext

Plaintiff may demonstrate that the Town's reasons were pretextual by "revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the Town's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer*, 509 F.3d at 1348 (quoting *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004)). These reasons are not pretextual, however, "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Id.* (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515 (emphasis in original)); *see also Paul*, 450 F. App'x at 853. As the Supreme Court has instructed, "the ultimate question is discrimination *vel non*. Once the defendant responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the factfinder must then decide *not* whether that evidence is credible, but whether the rejection was discriminatory within the meaning of Title VII." *St. Mary's Honor Ctr.*, 509 U.S. at 518–19 (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714–15 (1983)) (emphasis in original) (parenthetical omitted)). In other words, the Court continued, "It is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 519 (emphasis in original).

Here, Plaintiff relies on *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011), for the proposition that "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents "a convincing mosaic of circumstantial evidence that would allow a jury to

infer intentional discrimination by the decisionmaker." *Id.* at 1328. (citation omitted). Plaintiff attempts to construct that "mosaic" by pointing to the composition and size of the town (which she claims is mostly white and affluent), the attitude of some of its residents towards blacks (which in her experience was unwelcoming), previous racial comments by the police chief and her supervisor, the circumstances of Saradakis's return, and the curious timing of the Town's decision to hire Saradakis. (DE 45 at 11). Plaintiff further points out that she was next in line for a promotion because Saradakis had resigned from her part-time position, and Plaintiff suggests that the lieutenant lied to her when he said the Town was on a hiring freeze because the Town wanted Saradakis. Finally, Plaintiff argues that the Town ignored its own hiring procedures to avoid having to hire her, and she posits that the racist environment of the Town is exemplified by her supervisor's instructions to dispatch to call Plaintiff "to fill in a shift only if Kim, a white female, was not available." (DE 45 at 8). The Court finds that—based on these facts—Plaintiff's reliance on *Smith* is misplaced.

In *Smith,* the Eleventh Circuit analyzed the termination of a white supervisor for distributing a racially-insensitive e-mail targeting blacks. The backdrop of the termination, however, was that it occurred during a time in which the supervisor's employer, Lockheed-Martin Corporation, had just experienced an apparently racially-motivated mass shooting by a white supremacist employee. In the aftermath of the shooting, Lockheed-Martin was subjected to intense public scrutiny regarding its purported tolerance of racial hostility against blacks by whites in the workplace. The white supremacist shooter had a documented history of intolerance of blacks in the workplace. These facts, the court concluded, presented "sufficient circumstantial evidence from which a jury could infer that Lockheed displayed a racially discriminatory animus toward [the supervisor] when it fired

him . . . ." *Smith*, 644 F.3d at 1346–47.

Conversely, when faced with a factual scenario similar to the one at hand, the Eleventh Circuit rejected a plaintiff's attempt to prove pretext, concluding that she failed to rebut her defendant employer's proffered reasons that the employee who received the coveted position had superior qualifications and experience. *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160 (11th Cir. 2006). In *Brooks*, as here, the plaintiff brought a Title VII action against her employer for failure to promote. After establishing her *prima facie* case, the defendant employer proffered, as here, that its reason for failing to promote the plaintiff was that the person who received the promotion was more qualified. The Eleventh Circuit rejected the plaintiff's attempt to prove that the employer's proffered reason was pretextual because she did not meet her burden to show that "the disparities between her qualifications were so severe that *no* reasonable person could have chosen [the person who received the promotion] over her." *Id.* at 1163 (emphasis in original). "Indeed," the court continued, "[the plaintiff] offered *no* evidence to challenge [the defendant's] evidence that [the plaintiff] was hired based on her experience and first-hand knowledge related to the position." *Id.* Significantly, in *Brooks* the only undisputed fact was that the person who received the promotion had more experience—the plaintiff maintained that she was more qualified than the other two candidates. *Id.* at 1163–64. Here, it is undisputed that Saradakis had more experience *and* Plaintiff admits that Saradakis was the more qualified candidate. Thus, the facts of this case provide an even more compelling justification for granting summary judgment than in *Brooks* because the disparities between Plaintiff's qualifications and those of Saradakis were not "so severe that *no* reasonable person could have chosen" the undisputedly more qualified Saradakis over Plaintiff.

Plaintiff's remaining arguments provide little in the way of persuading the Court otherwise.

The composition and size of the Town, the attitude of its residents, and the previous racial comments by the police chief and Plaintiff's supervisor do not add to Plaintiff's mosaic of racial discrimination because they are nothing more than examples of her subjective belief that she was discriminated against.[11] This kind of "me, too" evidence would only be relevant if it could be attributed to the decisionmaker. It has no relevance if it comes from third parties unconnected to the hiring decision. *See Bell v. Crowne Mgmt., LLC*, 844 F. Supp. 2d 1222, 1236 (S.D. Ala. 2012). In

---

[11] As to Plaintiff's allegation that the police chief has a history of making racist comments, the only evidence Plaintiff presents in support is Michael Whelan's testimony that the police chief used to impersonate a black comedian and talk "like the people in Riviera Beach, like a street person, and he thought it was funny." (DE 47, Attach. 7: Whelan Dep. at 30–31). When Plaintiff was asked about the police chief during her deposition, she had the following exchange with Defendant's counsel:

> **Q.** How about [the police chief], did you believe he's a racist?
> **A.** I can't honestly say with [the police chief], I can't say honestly.
> **Q.** As you sit here today do you believe he was a racist?
> **A.** That's hard to answer. Because I felt in the beginning when I was there that he was a little—he was slightly different from the other co-workers like [the lieutenant] and Sergeant Kelley, I didn't get that same welcome feeling from [the police chief].
> **Q.** Could it just be that, you know, he's the chief and he's the big boss, or did you think he didn't like you because you're African American?
> **A.** Maybe it was—he was not the chief when I first went there, he was the captain, but maybe. I don't know. Maybe it's just his personality, so maybe, I don't know.
> **Q.** I mean, I'm not trying to beat this over the head, but I just need to know what you believe. Is it safe to say you don't know if he was a racist?
> **A.** Yeah. I don't know.
> **Q.** There's nothing that ever led you to believe he was racist, correct?
> **A.** Correct.

(Pl. Houston Dep. at 58–59). Plaintiff's and Whelan's testimony do not support the assertion that the police chief was a racist and that he chose not to promote Plaintiff as a form of racist discrimination.

15

other words, Plaintiff cannot point to the Town's allegedly racist environment and conclude that the person responsible for not hiring her made that decision for a racist reason. Rather, Plaintiff must show a connection between the allegedly racist environment and the decisionmaker. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir. 2008) (finding "me, too" evidence probative because it implicated a common decisionmaker). No such relationship between the Town's allegedly racist environment and the police chief's decision to promote Saradakis over Plaintiff has been shown. And, as previously demonstrated, Plaintiff's attempt to attribute racist motives to the police chief, as the decisionmaker, fails.

Moreover, the circumstances of Saradakis's return and the timing of the Town's decision to hire her are consistent with a business's decision to seek out the best, most qualified candidate available for a vacant position, as is the Town's decision to bypass whatever informal promoting process and hiring procedures may have been in place. "The federal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Paul*, 450 F. App'x at 853 (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)); *see also Springer*, 509 F.3d at 1350. And even if the Town had in place a more formal, structured personnel policy, any violation of such a policy does not necessarily indicate racial discrimination because the violation, by itself, does not account for the possibility that the Town sought an employee that was more qualified than whomever was next in line, not merely an employee outside of Plaintiff's protected class. *See Springer*, 509 F.3d at 1350.

Finally, Plaintiff's suggestion that the Town discriminated against her based on race because dispatch was instructed to call Kim Tasker, a white dispatcher, before Plaintiff whenever a shift

opened up is belied by Michael Whelan's Deposition. While Whelan stated that the supervisor did instruct dispatch to "use Kimberly whenever there was a need to fill overtime for a dispatcher," the supervisor's reasoning was that "[w]e have to treat people fairly. We have to, you know, let Kim get caught up." (DE 47, Attach. 7: Whelan Dep. at 28–29). The supervisor's intent to have Kim Tasker, a dispatcher less experienced than Plaintiff, gain more experience and "get caught up" is precisely the kind of "personnel decision" that the Court will not reexamine.

Plaintiff's evidence, taken in the light most favorable to her, fails to establish the requisite "mosaic" of circumstantial evidence to survive summary judgment. Plaintiff has provided no evidence that the Town's reliance on Saradakis's superior qualifications as the reason for her promotion "is a mask for racial discrimination. Absent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext." *Springer*, 509 F.3d at 1349 (citing *Denney*, 247 F.3d at 1185). Here, the police chief based his decision to hire Saradakis over Plaintiff on both subjective *and* objective criteria that supported Saradakis's hire, with the objective criteria being Saradakis's seniority with the Town and her broader range of job-related certifications. But even if subjective criteria was his sole consideration, "a subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Id.* (quoting *Denney*, 247 F.3d at 1186).

The Town articulated a legitimate, nondiscriminatory reason for not choosing Plaintiff for the position: Saradakis was more qualified. *See Wilson*, 376 F.3d at 1090. The police chief provided a clear and reasonably specific factual basis for this opinion when he stated that he was familiar with

17

Saradakis's work based on her nine years of employment with the Town, he knew she was an exemplary employee, he knew she was more qualified than Plaintiff, he knew that she had more experience than Plaintiff, he knew that she had more seniority with the Town than Plaintiff, and he knew that she had more relevant certifications than Plaintiff. (Kniffin Aff. ¶¶ 14–16).

Plaintiff argues that Saradakis's more extensive qualifications are not dispositive on the issue of whether the Town intentionally discriminated against Plaintiff because Saradakis "should have never been offered the position" as she was no longer employed with the Town when it decided to reinstate the fifth full-time dispatch position. (DE 45 at 6).[12]  Plaintiff takes issue with the lieutenant's reaching out to Saradakis when Plaintiff, a qualified *current* employee of the Town, made it known that she was interested in the position and should have been "next in line" according to the Town's usual procedure of filling open full-time positions with the part-time person with most seniority. (DE 45 at 6–12). Finally, Plaintiff suggests that if Saradakis had not been given the unfair advantage or "heads-up" of having the lieutenant recruit her for the position, Plaintiff would have been the person to be promoted into Whelan's vacant position. (DE 45 at 12). In other words, Plaintiff concludes, the Town gave Saradakis, "a white female, 'an edge' in the promotion process over [Plaintiff], a black female." (DE 45 at 12).

Even if the Court assumes that the Town's usual procedure of filling open full-time positions—which has thus far only been applied in the Town when promoting police

---

[12] The Court notes the Town's position that Saradakis and Plaintiff were both employed by the Town as part-time dispatchers when the promotional decision was made. (DE 50 at 2 n.1). Even assuming Plaintiff is correct and Saradakis was not employed by the Town at the time the decision to hire her was made, the outcome of this case is the same. This fact is not material to the Court's legal analysis.

officers—applies equally to dispatchers, based on the undisputed facts of this case, deviation from the usual hiring practice does not raise a genuine issue of material fact of pretext. While Plaintiff may have been the most qualified person to be promoted into Mr. Whelan's vacant position *of those currently employed with the Town*, that does not change the reality that the Town ended up with a more qualified employee than it would have otherwise had upon promoting Plaintiff. Giving Saradakis, a more qualified candidate, "an edge" in the promotion process over Plaintiff, a less qualified candidate, does not raise a question of pretext.

Plaintiff does not dispute that the Town's proffered reason for choosing Saradakis—that Saradakis was more qualified—is true. Instead, Plaintiff seeks to prove that the Town discriminated against her solely by relying on the Town's inability to prove that it did not. The Court is unpersuaded. Likewise, no jury could find that the Town's proffered reason for failing to promote Plaintiff—that Saradakis was more qualified—was not credible where the Town provided a sufficient factual basis for the claim *and Plaintiff admitted the claim was true*. The evidence as a whole does not support any reasonable inference of racist motivation.

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendants' Motion for Summary Judgment (DE 34) **is GRANTED**.

2) The Court shall separately issue judgment for Defendant.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 26th day of November, 2012.

_____
KENNETH A. MARRA
United States District Judge